UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | CASE NO. 1:14-cr-55-HSM-WBC |
| | ) | |
| LARRY BRASWELL | ) | |

REPORT and RECOMMENDATION

I. Introduction

Defendant Larry Braswell, in his second such motion, moves to suppress evidence consisting of digital scales, $1,122.00 in cash, 25 grams of marijuana and a .45 caliber semi-automatic firearm found by police pursuant to a warrantless search on February 23, 2014 [Doc. 50]. Defendant is charged with being a felon in possession of a firearm in violation of 28 U.S.C. § 922(g)(1). A previous motion to suppress the same evidence was denied by the District Court on October 9, 2014. In this current motion to suppress, defendant has raised one new ground for suppression and the defendant confirmed at the suppression hearing on March 10, 2015 that it is the only ground raised in this second motion as all other bases for suppression were previously raised in the first motion and denied by the District Court. The sole basis for suppression raised by defendant in this second motion is that the warrantless stop of his vehicle was unconstitutional, and all the evidence at issue in this case flowed from the vehicle stop and therefore must be suppressed as fruit of the poisonous tree. For the reasons stated herein, I find the vehicle stop was lawful and RECOMMEND defendant's motion to suppress be DENIED.

1

## II. Facts

An evidentiary hearing was held on March 10, 2015 on defendant's motion to suppress. One witness was called, Officer Benjamin Piazza of the Chattanooga Police Department. Officer Piazza testified as follows: On February 23, 2014, Officer Piazza was on patrol in Chattanooga, Tennessee in what is known as Sector 2. Sector 2 includes the old Harriet Tubman housing project, a grouping of duplexes and quadplexes, which had been condemned for about two years as of February 23, 2014. The Harriet Tubman housing project is a fairly self-contained and enclosed area and does not provide a thoroughfare or shortcut to any other location. Officers assigned to sector 2 frequently drive through the Harriet Tubman housing project, which is owned by the City of Chattanooga, because of problems with squatters and copper thieves.

In the late afternoon, defendant was driving in his patrol car through the Harriet Tubman housing project when he saw a white Lincoln vehicle (the Lincoln) parked in front of one of the condemned duplexes. A woman was sitting in the Lincoln and a man, the defendant, was walking toward the Lincoln from a bush in front of the duplex. He appeared to be zipping up is pants. Officer Piazza exited his vehicle and approached defendant. He asked defendant what he was doing and defendant indicated he had been urinating. At this point, K-9 Officer Billy Atwell had arrived in a separate vehicle. While standing near the Lincoln, Officer Piazza asked defendant where he was going and defendant stated he was taking his passenger to her mother's house in Alton Park. Officer Piazza smelled "green" marijuana emanating from the Lincoln and he asked defendant if he had any marijuana. Defendant stated he did not and Officer Piazza could search the vehicle. Officer Piazza did conduct a quick search of the vehicle and found nothing although when he opened the console the odor of green marijuana was even stronger. Officer Piazza ran a check on defendant's driver's license on the National Crime Information

2

Center which indicated the license was revoked. Nevertheless, Officer Piazza decided not to cite or arrest the defendant for driving on a revoked license. Defendant assured Officer Piazza that he would take his passenger straight to her mother's house and not drive anymore that day. Officer Piazza told defendant that the buildings in the Harriet Tubman housing project had been condemned and there was no reason for anyone to be driving through the area, and if he did come back it would constitute trespassing. Officer Piazza then allowed defendant to leave.

A short time later, Officer Piazza was parked in his patrol car between two duplexes in the Harriet Tubman housing project on the grass completing his report of the encounter he had just had with defendant. K-9 Officer Billy Atwell was also present in his own vehicle. Officer Piazza noticed a green Toyota Camry (Camry) traveling down the street with its headlights off. It was now dark outside. Officer Piazza eased out, headlights off, between the two buildings and began to follow. He noticed that the Camry slowed down at the same spot where Officer Piazza had encountered defendant earlier that day. Officer Piazza then turned on his headlights and the Camry picked up speed. After a short distance, the Camry's headlights were activated. The Camry reached an intersection and ran a stop sign without slowing. The Camry continued to gain speed and it took Officer Piazza four blocks to catch up. Officer Piazza activated his blue lights and less than 10 seconds later the Camry, driven by defendant, pulled over. During the hearing, Officer Piazza testified he knew he could stop the driver for running the stop sign and for driving in the dark with headlights off. Officer Piazza stated that he will stop a vehicle for dtiving in the dark without headlights even if it has turned on its headlights before he makes the stop in order to ascertain whether the driver is impaired.

When Officer Piazza approached the vehicle, he recognized the driver as the same man he had encountered earlier. There was a male passenger in the front seat. Defendant stated, "I

3

guess I'm going to jail." Officer Piazza placed defendant under arrest for driving on a revoked license. After defendant exited the Camry, Officer Piazza patted him down and found $1,120 on his person. A search of the vehicle revealed a set of digital scales with marijuana residue. With K-9 Officer Atwell there to assist, Officer Piazza separated defendant and the passenger from each other. Officer Piazza gave the defendant his *Miranda* warning and proceeded to question him about his purpose for being in the Harriet Tubman housing project. Defendant stated he had dropped some money at the place where Officer Piazza had encountered the defendant earlier. Officer Piazza asked the same question of the passenger and the passenger said the defendant had dropped a key earlier and they had come back to look for it. Officer Piazza testified at the hearing that it was clear to him they were looking for something in the place where he had first encountered the defendant, and there were a number of other factors that made the situation very suspicious: defendant had promised he would not drive again that day, Officer Piazza had warned defendant not to trespass on the Harriet Tubman housing project again, and they drove away quickly when realizing that another vehicle was behind them. Officer Piazza concluded that whatever defendant had dropped was probably illegal. Officer Piazza therefore decided to return to the first place he had encountered defendant and look around. After looking about the duplex, Officer Piazza found the 25 grams of marijuana and the .45 caliber semi-automatic firearm on the ground near the bush at the front of the duplex.

The defendant introduced into evidence a video of the second encounter Officer Piazza had with defendant on February 23, 2015. Officer Piazza testified that his patrol car was equipped with two cameras, one mounted to the dash which looks out the front windshield and one mounted to look to the rear seat. Whenever the engine is running the cameras are on and record in 30 second sequences. Those sequences constantly record over themselves unless a

4

triggering event occurs: the vehicle's blue lights are activated, the officer retrieves his rifle, or he pushes a recording button. In those instances, the cameras will capture the prior 30 seconds prior to the triggering event and continue to record. All recordings are automatically downloaded to a hard drive at the police station.

In this case, the video camera on Officer Piazza's patrol car did not begin to record until Officer Piazza activated his blue lights. At this point, defendant had already had his headlights on for 30 seconds. As a result, the video camera does not capture the Camry driving without headlights on. It does show unequivocally that it was dark outside and that defendant ran through a stop sign making no effort to even slow down.

### III. Analysis

As previously stated, the only issue before the undersigned, because the District Judge has already addressed the other issues raised by defendant, is whether Officer Piazza's traffic stop of the Camry defendant was driving met constitutional standards.

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. Amend IV. Once a defendant shows a search and seizure was warrantless, the search and seizure are *per se* illegal, and the burden is on the government to show that one or more of the exceptions to the Fourth Amendment's warrant requirement apply. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971), *United States v. Herndon,* 501 F.3d 683, 692 (6th Cir.2007); *United States v. Oliver*, 686 F.2d 356, 371 (6th Cir.1982); *United States v. Square*, 790 F. Supp.2d 626, 643 (N.D. Ohio 2011).

A police officer may lawfully conduct a traffic stop of a vehicle without a warrant if he has probable cause to believe the driver has committed a traffic violation. *Whren v. United States*, 517 U.S. 806 (1996); *United States v. Hughes*, 606 F.3d 311, 316 (6th Cir. 2010); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc). This probable cause determination "is fact

5

dependent and will turn on what the officer knew *at the time he made the stop." Ferguson*, 8 F.3d at 391 (emphasis original).

After the initial stop is lawfully made, the scope of the detention must be reasonably related to the circumstances which justified the stop in the first place. *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000) (citing *Terry v. Ohio,* 392 U.S. 1, 19–20 (1968)); *United States v. Noble*, 762 F.3d 509, 519 (6th Cir. 2014) ("'The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case,' but the duration of the stop must not be 'longer than is necessary to effectuate the purpose of the stop.'") (quoting *Florida v. Royer,* 460 U.S. 491, 500 (1983) (plurality)).

In the instance case, Officer Piazza personally observed two traffic violations, one of which was recorded on the video tape and one which was not. Driving without headlights on thirty minutes after dusk violates Tenn. Code Ann. § 55-9-406. The video showed it was very dark outside when Officer Piazza stopped the Camry and Officer Piazza testified he believed it was at least 30 minutes after dusk, and I so find. Defendant questions Officer Piazza's credibility as to whether he was driving the Camry without headlights on, suggesting that Officer Piazza's true intentions were to harass the defendant. However, if Officer Piazza had wanted to make matters difficult for the defendant, he could have arrested him after he learned defendant did not have a valid driver's license during the first encounter. I find no reason to doubt Officer Piazza's truthfulness about the headlights. Second, the video shows the Camry speeding through a stop sign, thus Officer Piazza unequivocally had probable cause to stop defendant for that traffic violation. The scope of the traffic stop is not an issue in this case because as soon as Officer Piazza exited his vehicle and walked up to the Camry, he realized it was being driven by

the defendant who had no valid license. Thus, defendant was properly placed under arrest for driving without a valid license. Tennessee Code Annotated § 55-50-504.

### IV. Conclusion

Accordingly, for the reasons stated herein, I RECOMMEND that the Defendant's motion to suppress [Doc. 50] be DENIED[1].


S /*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).